# Williamson

## *v.*

## Commonwealth.

*(Supreme Court of Appeals of Virginia, Dec. 5, 1895.)*

[23 S. E. Rep. 762.]

### Criminal Law—Receiving Stolen Goods—Sufficiency of Evidence—Case at Bar.*

In a prosecution for receiving stolen goods, that defendant denied receiving clothing from the negro who had stolen it, and who, defendant knew, was employed in a merchant tailor's store, and who belonged to the best circles of his people, is insufficient to prove knowledge that the goods were stolen, in the face of open conduct of defendant in acknowledging that he had received other goods from the thief, and proof of good character.

Appeal from corporation court of Danville.

One Williamson was convicted of a crime, and appeals. Reversed.

*Berkeley & Harrison,* for plaintiff in error.

*R. Taylor Scott, Atty. Gen.,* for the Commonwealth.

Cardwell, J., delivered the opinion of the court.

The plaintiff in error was indicted in the corporation court of the city of Danville for receiving and concealing certain goods, alleged to be the goods and chattels of one John C.

---

*See foot-note to Hey *v.* Com., 32 Gratt. 946 (Va. Rep. Anno.); also, foot-note to Price *v.* Com., 21 Gratt. 846 (Va. Rep. Anno.).

Enright, knowing that the goods and chattels had been stolen; and at his trial, at the December term of the court, 1894, he was found guilty by the jury, and his punishment fixed by a fine of $5. A motion was made on behalf of the accused to set aside the verdict and grant him a new trial, on the ground that the verdict was contrary to the law and the evidence. The action of the court in overruling this motion constitutes the only assignment of error to be considered here.

In Hey's Case, 32 Grat. 946 (a case similar in nearly every respect to this), Judge Burks, in delivering the opinion of this court, says : "To convict an offender against this statute, four things must be proved : (1) That 'the goods or other things' were previously stolen by some other person; (2) that the accused bought or received them from another person, or aided in concealing them ; (3) that at the time he bought or received them, or aided in concealing them, he knew they had been stolen ; (4) that he so bought or received them, or aided in concealing them, malo animo, or with a dishonest intent." The first ingredient of the offense was proven in the present case, but we are to see, from the examination of the evidence, whether the remaining three essential ingredients of the offense were sufficiently proven to warrant the verdict of the jury. The facts are certified by the court below, and not the evidence, and they may be briefly stated as follows : Enright, a merchant tailor of Danville, on October 24, 1894, received information which led him to suspect that Thomas Galloway, a young negro who had been in his employ for 2½ years, had been systematically robbing his store, and caused his arrest. After his arrest Galloway, under assurances that it would be better for him, disclosed to Enright and the police, as far as he could, to whom he had sold the goods, and upon this information they succeeded in finding nearly all of the goods, which had been scattered by Galloway, in small pieces and lots, all over the city of Danville, among his people. Galloway had been a trusted employee of Enright up to the

time of his arrest, and had never been suspected of dishonesty. He belonged to the best circles of his people, and up to the time of his arrest stood very high among them, and without reproach. Galloway testified that he gave the accused and others no reason to believe that he had stolen the goods ; that, so far as he knew, the accused did not know that they were stolen. The accused said he did not. The police found goods with various people in small lots, and when they started to go to the house of the accused they met him in the street, and when asked if he had any goods gotten of Tom Galloway, he admitted he had one piece which he had gotten from Galloway, but had sold that to one Wilson, and offered to carry them to Wilson. He denied having more goods gotten from Galloway, but said he had gotten other goods from a little black fellow who came up on the excursion. He then went with the police to his house, and gave up a frock coat and a suit of clothes, and told the police they could get some goods (a pants pattern) from one John Brooks. For this he had paid $2, and sold it to Brooks for $3. All of the goods found in the accused's possession, or with persons to whom he directed the police, were Enright's goods. The accused said he had paid Galloway only $2 in money and the balance in medical services. This statement is corrobated by Galloway. The goods in the possession of the accused, when made up into a coat and suit of clothes, were worn by him openly, and no concealment of them was made. When the accused was met by Enright and the officers, he knew Galloway had been arrested, yet told of the goods he had sold to Wilson and others. The only conflict between the witness Galloway and the accused is as to the accused's statement that he had gotten some other goods from a little black man on an excursion ; Galloway saying he had gotten them from him. The accused further admitted knowing that Galloway was a porter of Enright, a merchant tailor. It will be seen that there is no direct evidence that the accused had knowledge that these goods had been stolen. That is not

pretended.   If guilty knowledge was established, it must have been by the circumstances proved in the case.   Like the circumstances in most all other cases of this character, they raise a suspicion of guilty knowledge, but this is not sufficient to warrant conviction.   The open conduct of the prisoner, his general good character for probity and honest demeanor, do not seem to be reconcilable with the idea of guilty knowledge that the goods gotten by him from Galloway had been stolen. The case, we think, is covered by Hey's Case, supra, and is controlled by the judgment of the court therein, and we are therefore of opinion that it was error in the trial court to overrule the motion to set aside the verdict and grant the accused a new trial.   The judgment of the corporation court of Danville must be reversed and annulled, and the  case remanded to that court for a new trial.